**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GLASS-STEEL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3520 |
| | § | |
| RN CIVIL CONSTRUCTION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This case arises from a contract dispute. RN Civil Construction, LLC and Water Technology Group (WTG) contracted with Glass-Steel, Inc. to manufacture specialized fiberglass. (Docket Entry No. 1-6 ¶7). In August 2018, Glass-Steel sued RN Civil and WTG in state court for anticipatory breach and breach of contract. (*Id.* ¶15). RN Civil and WTG removed to federal court based on diversity jurisdiction under 28 U.S.C. § 1446(b)(1), (Docket Entry No. 1 at 1), and then moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), (Docket Entries No. 7, 10). WTG also moved to dismiss or transfer venue under 28 U.S.C. § 1406 and § 1404(a), and to dismiss under Rule 12(b)(6) for failure to state plausible claims for fraud and exemplary damages. (Docket Entries No. 8, 9). Glass-Steel responded, voluntarily dismissed its claims against RN Civil, and asked for leave to amend its fraud and exemplary-damage claims against WTG. (Docket Entries No. 16, 18, 19, 20).

Based on the pleadings, the motions and responses, the record, and the applicable law, the court denies WTG's motion to dismiss for lack of personal jurisdiction and improper venue and its motion to transfer, and grants Glass-Steel's motion for leave to amend its complaint. The amended

1

complaint must be filed by **January 11, 2019**.

The reasons for these rulings are explained in detail below.

I. **Background**

Glass-Steel is a Nevada corporation with its principal place of business in Montgomery County, Texas. (Docket Entry No. 1-6 ¶5). RN Civil is a Colorado company with its principal place of business in Centennial, Colorado. (Docket Entry No. 1-6 ¶ 2). WTG is the doing-business-as name for Cogent, Inc., a Missouri corporation with its principal place of business in Missouri. WTG's principal place of business is in Golden, Colorado. It does not have property, an office, or an agent for service of process in Texas. (Docket Entry No. 1-6 ¶¶ 2–3).

In June 2016, WTG, acting as an agent of RN Civil, solicited bids from Glass-Steel for specially fabricated fiberglass and composite components to be used in a wastewater-treatment project in Broomfield, Colorado. (*Id*. ¶ 5). Based on the solicitation, RN Civil submitted a bid to the City and County of Broomfield and became the project's general contractor. After receiving project purchase orders from WTG and RN Civil in January 2018, Glass-Steel promptly purchased raw materials and began fabrication. (*Id*. ¶ 7–8).

Glass-Steel alleges that RN Civil and WTG substantially modified the manufacturing design multiple times, requiring Glass-Steel to change its production drawings, acquisition orders, and production processes. (*Id.*). According to Glass-Steel, these intervening changes, together with RN Civil's and WTG's late acceptance of the bid and the long time needed for obtaining the raw materials, caused delays in the fabrication. (*Id*. ¶ 7). Glass-Steel alleges that in June 2018, representatives of RN Civil and WTG traveled to Glass-Steel's fabrication facilities in Texas, inspected the fabrication progress, and approved it. (*Id*. ¶ 8; Docket Entry No. 18 at 9).

2

On July 25, 2018, Glass-Steel received an email from RN Civil and WTG, stating that they were cancelling the contract because Glass-Steel failed to deliver the finished products to Colorado by May 4, 2018, and did not "provide any assurance" as to when the products would be delivered. (Docket Entry No. 1-6 at 16). Glass-Steel contended that the contract did not set a fixed completion or deliver-by date. (Docket Entry No. 1-6 at ¶ 7). Glass-Steel asked WTG to rescind the cancellation, stating that August 31, 2018 was the delivery date for the expected fiberglass pieces. (Docket Entry No. 18 at 9). WTG refused to rescind. Glass-Steel alleged that by the time it received the cancellation notice, it had spent over $115,000 on raw materials for the contract, invested money on labor and overhead, and substantially completed one of the three fiberglass pieces WTG had ordered. (Docket Entry No. 1-6 at. ¶¶ 8, 13).

In August 2018, Glass-Steel sued WTG and RN Civil in state court, alleging anticipatory breach, breach of contract, fraud, and estoppel, and seeking a declaratory judgment, actual damages, and exemplary or punitive damages. (*Id*. ¶¶ 15–20). RN Civil and WTG removed. (Docket Entry No. 1). In November 2018, Glass-Steel voluntarily withdrew its claims against RN Civil. (Docket Entry No. 16). WTG now moves to dismiss for lack of personal jurisdiction under the Federal Rule of Civil Procedure 12(b)(2), and for improper venue under 28 U.S.C. § 1406. Alternatively, WTG moves to transfer venue to the District Court of Colorado under §1404(a). (Docket Entries No. 7, 9). WTG also moves to dismiss Glass-Steel's fraud and exemplary-damage claims under Rule 12(b)(6), to which Glass-Steel responded. (Docket Entries No. 8, 18–20).

II.     Analysis

   A.     The Motion to Dismiss for Lack of Personal Jurisdiction over WTG

      1.     The Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising jurisdiction is consistent with due process. *See Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004); *Ham v. La Cienga Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process permits personal jurisdiction over a nonresident defendant with "minimum contacts" with the forum state, subject to the limit of not offending "traditional notions of fair play and substantial justice." *Id*. The extent of the contacts determines whether the court's jurisdiction is specific or general. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A court has general jurisdiction over a nonresident defendant "to hear any and all claims" if that defendant's contacts with the state are so "'continuous and systematic' as to render [that defendant] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'continuous and systematic contact test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to

adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citations omitted). A court asks "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protection of its laws.'" *Id*. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quotation omitted). Although the defendant's contacts with the forum must be "more than random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (quotation omitted).

Under Rule 12(b)(2), "[w]hen the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." *Johnston*, 523 F.3d at 609 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). In deciding whether personal jurisdiction exists, "[t]he district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v. SKF Serige AB*, No. 13-1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk*

5

*Haydel*, 517 F.3d at 241). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston*, 523 F.3d at 609 (quotations omitted). But the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandwine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Because specific personal jurisdiction is a claim-specific inquiry, a plaintiff bringing multiple claims must establish specific jurisdiction for each claim if the claims "arise out of different forum contacts of the defendant." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

Glass-Steel does not invoke general jurisdiction over WTG. "Specific jurisdiction requires a plaintiff show that (1) there are sufficient (i.e., not random fortuitous or attenuated) pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. Once [the] plaintiff makes that showing, the defendant can then defeat the exercise of specific jurisdiction by showing (4) that it would fail the fairness test, i.e, that the balance of interest factors show that the exercise of jurisdiction would be unreasonable." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221–22 (5th Cir. 2014) (quoting ROBERT C. CASAD & WILLIAM B. RICHMAN, JURISDICTION IN CIVIL ACTIONS § 2–5, at 144 (3d ed. 1998)); *see also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Seiferth*, 472 F.3d at 271.

The court has personal jurisdiction if the contacts "proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985). A substantial connection can result from a single act, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957), but "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253 (quotations omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (quotations omitted). The Supreme Court long ago rejected mechanical tests, particularly in the current context, for personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Instead, [the Court has] emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minium contacts within the forum." *Burger King*, 471 U.S. at 478–79 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–17 (1943)).

    2.    **Analysis**

        a.    **WTG's Purposeful Availment**

Glass-Steel alleges that WTG purposefully availed itself of the privilege of conducting business in Texas through the following contacts:

(1) WTG solicited bids from Glass-Steel for designing, fabricating, and delivering the replacement fiberglass with the knowledge that Glass-Steel's fiberglass manufacturing plant and office were in Texas;

(2) WTG agreed to design and manufacture the fiberglass in Texas;

(3) WTG's representative made at least one business trip to Glass-Steel's Texas manufacturing facility to inspect the fabrication status;

(4) WTG agreed to pay for the fiberglass in Texas;

(5) WTG agreed to deliver the fiberglass F.O.B. Texas; and

(6) WTG communicated extensively with Glass-Steel's Texas office by email and by phone.

(Docket Entry No. 18 at 6–7).

According to Glass-Steel, the "hub" of the parties' contract was in Texas. WTG disagrees, arguing that the purpose of the contract was to manufacture the specially designed fiberglass that "would be delivered and installed as part of the refurbishment of the wastewater [treatment] facility" in Broomfield, Colorado. (Docket Entry No. 7 at 7). WTG contends that it did not purposefully avail itself of the opportunity to do business in Texas. Instead, WTG asserts that Glass-Steel is the only link between it and Texas. (*Id.*).

The facts that Glass-Steel contracted with WTG to manufacture fiberglass in Texas does not subject WTG to personal jurisdiction in Texas for a dispute arising from that contract. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (merely contracting with a forum-state defendant does not establish minimum contacts); *see also Edwards v. Anderson*, No.4:17-cv-3115, 2018 WL 1172607, at *2 (S.D. Tex. Mar. 5, 2018) (the plaintiff's performance of a contract in Texas did not establish the Texas court's personal jurisdiction over the nonresident defendant). WTG's communications with Glass-Steel about the contract and WTG's contract payments in Texas are also

insufficient for personal jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[The Fifth Circuit] has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts."); *see also Gunble Lining Constr. Corp. v. Adamas Cty. Asphalt, Inc.*, 85 F. 3d 201, 2015 (5th Cir. 1996); *Valero Mktg. & Supply Co. v. Gen. Energy Corp.*, 702 F. Supp. 2d 706, 715–16 (S.D. Tex. 2010). "[P]urchases and related trips, standing alone, are not a sufficient basis for . . . jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). For example, in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983), the plaintiff's allegations that (1) the defendant agreed to purchase specific goods to be manufactured in Texas, (2) payment was to be made in Texas, (3) extensive contract negotiations between the parties originated in Texas, and (4) the defendant's officer traveled to Texas to sign the contract, did not establish personal jurisdiction in Texas. *Id.* at 1028.

According to Glass-Steel, WTG also solicited Glass-Steel's bid in Texas and sent representatives there to inspect Glass-Steel's performance. The issue is whether these contacts, together with WTG's other Texas activities, make a *prima facie* showing of personal jurisdiction over WTG by a Texas court. *Moncrief Oil*, 481 F.3d at 312–13 (citing *Miss. Interstate Express, Inc. v. Transpo Inc.*, 681 F.2d 1003, 1008–09 (5th Cir. 1982); *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003)).

WTG does not dispute that it knowingly reached out to Texas to solicit bid for fiberglass fabrication in Texas. *See Cent. Freight*, 322 F.3d at 382 (citing *Burger King*, 471 U.S. at 479–80

(Rudzewicz "reached out" beyond Michigan and made sufficient contacts with Florida when he negotiated with a Florida corporation for a Burger King franchise that envisioned long-term connections between his business and Burger King in Florida, and he had many communications with the Florida corporation by mail and by telephone)); *Solid Sys. CAD Servs. v. Total Risc Tch, Pty. Ltd.*, No. H-12-3176, 2013 WL 3787495, at *6 (S.D. Tex. July 18, 2013) ("[A] non-resident defendant who *chooses* to contract with a resident plaintiff 'is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that [the resident plaintiff] would in fact perform a material part of its contractual obligations within the forum state." (emphasis added) (quotation omitted)). This case does differ from *Hydrokinetics*, in which the plaintiff initiated the contract and substantially negotiated it in the defendant's home state, instead of in the forum state, as here. *Hydrokinetics*, 700 F.2d at 1029.

Despite this difference, when WTG entered into the contract, it knew that contract performance would be in Texas. The fabrication occurred in Texas; the payment was to be made in Texas; and delivery was F.O.B. Texas.[1] Texas is the "hub" of the contract. WTG's contacts with Texas were "instrumental in the formation of the contract or its breach." *Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG*, 612 F. Supp. 2d 813, 821 (S.D. Tex. 2009). WTG's Texas

---

[1] F.O.B., or "Free on Board," indicates that title to goods and the risk of loss is passed to the person who picks up the goods or products at the location indicated. F.O.B. delivery is a factor in determining whether a defendant has minimum contact with a forum state. *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 471 n.10 (5th Cir. 2006) (comparing *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987) (the sale was initiated by the plaintiff and was shipped F.O.B. California, the defendant's place of business, making personal jurisdiction proper in California); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188–89 (5th Cir. 1978) (the place of F.O.B. shipment, without more, is not a purposeful availment of the forum state)); *see also Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG*, 612 F. Supp. 2d 813 (S.D. Tex. 2009) (considering which party made the shipment arrangement as a factor for specific-jurisdiction analysis).

contacts were neither "random, fortuitous, or attenuated," nor based on Glass-Steel's unilateral activity. *Cf. Edwards*, 2018 WL 1172607, at *3 (refusing to find a Texas court's specific jurisdiction based solely on the defendant's obligation to send checks to the Texas plaintiff); *McFadin*, at 587 F.3d at 760 (the defendant did not purposefully avail itself of conducting business in Texas by signing a contract intended to open markets outside Texas). Although the contract does not contain a Texas choice-of-law or forum-selection clause, "neither does [it] contain any provision that would give [WTG] reason to think that it could not be haled into court in Texas in the event that [WTG] allegedly breached its agreement." *Cent. Freight*, 322 F.3d at 383.

Although the Fifth Circuit precedents set a high threshold for specific jurisdiction over a nonresident defendant through its contract relationship with a Texas company, Glass-Steel has made a *prima facie* showing that WTG purposefully availed itself of the benefits of the Texas forum by alleging that WTG solicited the bid from Glass-Steel in Texas, the performance was to be in Texas, and delivery was F.O.B. Texas. The hub of the parties' contract activities was in Texas.

### b. The Exercise of Jurisdiction over WTG in Texas Is Reasonable

WTG argues that requiring it to defend the case in Texas would offend traditional notions of fair play and substantial justice. WTG argues that it has no Texas presence, its witnesses are in Colorado, and Texas has little interest in a dispute relating to items ordered for a public wastewater-treatment facility in Colorado. (Docket Entry No. 7 at 7).

The defendant has the burden of proving that the assertion of jurisdiction is unfair, despite sufficient contacts. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). A court examines "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient

11

administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006); *Antonio Leonard TNT Prods., LLC v. Goossen-Tutor Promotions, LLC*, 47 F. Supp. 3d 500, 510 (S.D. Tex. 2014).

WTG has not met its burden of showing that litigation in Texas would be unfair or unreasonable. Texas has an interest in ensuring a Texas company a prompt and sufficient remedy for breach of contract. The parties' dispute focuses on whether Glass-Steel delayed fabricating and delivering the fiberglass in Texas. Most of the evidence and witnesses relevant to the production are in Texas. Although Glass-Steel also has documents and witnesses in Colorado, the fabrication took place in Texas, and the evidence and witnesses relevant to that are in Texas. One party's "generalized difficulty in traveling to Texas is . . . not a burden violative of due process." *McFadin*, 587 F.3d at 764. The burden on WTG to litigate in Texas, if anything, appears less than the burden on Glass-Steel to litigate in Colorado. *See Solid Sys. CAD Servs.*, 2013 WL 3787495, at *6; *Epcon Indus. Sys., L.P. v. Progressive Design, Inc.*, No. H-06-4123, 2007 WL 1234928 (S.D. Tex. Apr. 25, 2007) (the burden on a Virginia company to defend in Texas was not unfair because the company solicited the contract in Texas and initiated numerous communications and trips to Texas during the contract performance).

WTG's motion to dismiss based on lack of personal jurisdiction, (Docket Entry No. 7), is denied.

**B.    The Motion to Dismiss for Improper Venue or to Transfer**

Under 28 U.S.C. § 1391(b), venue is proper in:

(1)    a judicial district in which any defendant resides, if all defendants are

> residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any jurisdiction in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A party may move to dismiss based on improper venue under Rule 12(b)(3). FED. R. CIV. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation omitted). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). If venue is improper, § 1406 instructs the district court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision to dismiss or transfer lies within the court's discretion. *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012).

WTG argues that venue is improper in the Southern District of Texas because "a substantial part of the events or omissions giving rise to [Glass-Steel's] claim did not occur [here]." (Docket Entry No. 9 at 6–7). WTG relies on *American Carpet Mills v. Gummy Corp.*, 649 F.2d 1056 (5th Cir. 1981), which held that "[i]n an action for breach of contract, venue is proper at the place of performance." *Id.* at 1059. WTG alleges that Glass-Steel had to deliver the fiberglass components to Broomfield, Colorado, making Colorado the place of performance and the place of proper venue.

13

The parties dispute whether Glass-Steel breached the contract by delays in fabrication and delivery in Texas, and whether WTG breached by unilaterally cancelling the contract. Venue is proper in the Southern District of Texas, where a substantial part of the events or omissions occurred. Texas is where Glass-Steel manufactured the fiberglass and received WTG's cancellation notice. Although the fiberglass was to be installed in the Colorado wastewater-treatment facility, Glass-Steel did not deliver them. The evidence will focus on Glass-Steel's fabrication work in Texas.

Although the parties dispute the primary place of contract performance, on this motion, the court accepts Glass-Steel's allegations as true, drawing reasonable inferences and resolving factual conflicts in Glass-Steel's favor, unless contradicted by WTG's affidavits. *Braspetro Oil*, 240 F. App'x at 615. Glass-Steel alleges and provides affidavit testimony showing that WTG agreed to have the fiberglass made in Texas, take delivery of the completed fiberglass "F.O.B. Conroe, Texas," and pay in Texas. (Docket Entry No. 18, Exh. D). Because the primary place of performance is in Texas, *American Carpet Mills* does not control.

WTG's motion to dismiss or transfer for improper venue is denied.

### C.     The Motion to Transfer Venue

WTG alternatively asks the court to transfer this case to the United States District Court of Colorado under 28 U.S.C. § 1404(a), because "the subject of the parties' contract, key witnesses, documents, and physical evidence are all in the Denver, Colorado area." (Docket Entry No.9).

A court may transfer a case "to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing

their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). The moving party must demonstrate that its preferred venue is "clearly more convenient than the venue chosen by the plaintiff" to prevail on a motion to transfer." *Id*. at 315. There is a strong presumption in favor of a plaintiff's choice of his home venue, "which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

Glass-Steel could have brought this case in the District of Colorado, Denver Division, where WTG resides. The question is whether the District of Colorado is clearly more convenient than the Southern District of Texas.

The Fifth Circuit has adopted the private- and public-interest factors described in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine whether to transfer venue. *See Volkswagen*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. These factors are not exhaustive, and none "can be said to be of dispositive weight." *Action*

*Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986)).

WTG fails to show that the private-interest factors clearly favor litigation in the District of Colorado. Courts consider the hardship of transporting the documents or physical evidence. *Barrow v. Sutton*, No. H-14-200, 2014 WL 12586346, at *3 (S.D. Tex. July 16, 2014). The disputes concern both Glass-Steel's fabrication of the fiberglass and WTG's cancellation of the contract. Each party can show easier access to evidence and witnesses in its home state. There are documents and witnesses in both Texas and Colorado, but most appear to be in Texas, where the fabrication took place. WTG asks the court to focus on the Colorado location of the wastewater-treatment project, for which the fiberglass was manufactured and where engineering drawings and similar documents are located. But the fiberglass was manufactured in Texas and never delivered to, or installed in, the Colorado project. The physical evidence relating to Glass-Steel's fabrication is in Texas. The accessibility-of-evidence factor favors keeping venue in the Southern District of Texas.

Glass-Steel and WTG each listed six key witnesses residing in Texas and Colorado. Whether the case proceeds in Texas or Colorado, the parties will not be able to use compulsory process to secure the attendance of nonparty witnesses. *See* FED. R. CIV. P. 45(c)(1)(A).

WTG has a nonparty witnesses, an engineer, who works at the wastewater-treatment facility in Colorado. WTG argues that this witness will provide "pertinent testimony regarding Glass-Steel's insufficient or untimely drawings, the timeline for the wastewater treatment project, and the necessity for Glass-Steel to manufacture and deliver the covers in a timely fashion." (Docket Entry No. 9 at ¶ 30). WTG relies on *Gundle Lining Construction Corporation v. Fireman's Fund Ins. Company*, 844 F. Supp. 1163 (S.D. Tex. 1994), asking the court to give greater weight to the

16

convenience of this nonparty witness. *Gundle*, 844 F. Supp. 1163 at 1166. While the convenience of nonparty witnesses is the single most important factor, it is not determinative. The record shows that the nonparty witness is likely not the only one who can testify to the facts at issue. Party witnesses, including WTG's own employees, are also likely able to testify to Glass-Steel's allegedly insufficient and untimely designs, drawings, and fabrication progress. The private-interest factors fail to show a clear basis for changing venue to the District of Colorado.

The first public-interest factor considers the relative congestion of the courts in question. *Volkswagen*, 371 F.3d at 203. "Generally, this factor favors a district that can bring a case to trial faster." *Frito-Lay N. Am. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012). The June 2018 Federal Court Management Statistics show that the Southern District of Texas has a median time to trial of 20.4 months, while the District of Colorado has a median time of 28 months. (Docket Entry No. 9 at ¶¶ 34–35). This factor does not weigh in favor of transfer.

The second public-interest factor considers the local interest in the litigation. "The focus of the inquiry is the relative connection of the localities to the events giving rise to this suit and their corresponding interests in the resolution of this controversy." *Clayton Williams Energy, Inc. v. Pace Energy Sols., Inc.*, No. 15-cv-43, 2015 WL 2384600, at *5 (W.D. Tex. May 19, 2015). Texas has a strong interest in resolving contract disputes in which its resident is the plaintiff. *Kelly Law Firm, PC v. An Attorney for You*, 679 F. Supp. 2d 755, 771 (S.D. Tex. 2009). WTG argues that Colorado has a stronger interest because this dispute arises from a contract for renovating a public wastewater-treatment facility in Colorado and "directly impacts" the citizens and jurors there. (Docket Entry No. 9 at ¶ 38). Although both Colorado and Texas have an interest in this case, the disputes mainly focus on Glass-Steel's contract performance in Texas, and the fiberglass was never delivered to

Colorado. The "localities to the events giving rise to this suit" are more in Texas than in Colorado.

The third and fourth public-interest factors address the court's familiarity with the controlling law and the avoidance of unnecessary conflict-of-law problems. Glass-Steel and WTG dispute whether Texas or Colorado law applies. Either court would apply a conflicts analysis to decide whether Texas or Colorado law governs. Under *Van Dusen v. Barrack*, 376 U.S. 612 (1964), after transfer, the District of Colorado would apply the Texas choice-of-law analysis. *Id*. at 639 ("[T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). The third and fourth factors do not weigh in favor of transfer.

The private- and public-interest factors weigh against transfer to the District of Colorado. WTG fails to carry its burden of showing that the District of Colorado is clearly more convenient for the parties and witnesses than the Southern District of Texas. WTG's alternative motion for transfer is denied.

### D. The Motion for Partial Dismissal for Failure to State a Plausible Claim

WTG moved to dismiss Glass-Steel's fraud and exemplary-damage claims, or for a more definite statement. (Docket Entry No. 8 at ¶ 1). Glass-Steel responded by asking for leave to amend its complaint. (Docket Entry No. 19).

A court generally gives a plaintiff at least one chance to amend under Rule 15(a). *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). Glass-Steel's motion for

leave to amend its complaint is granted, mooting the motion for a more definite statement. The amended complaint must be filed by **January 11, 2019**.

III. **Conclusion**

WTG's motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 7), is denied. WTG's motion to dismiss based on improper venue and the alternative motion to transfer, (Docket Entry No. 9), are denied. The court grants Glass-Steel's motion for leave to amend its complaint, (Docket Entry No. 20), by **January 11, 2019**.

SIGNED on November 26, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge